1  Andrea M. Kimball, State Bar No. 196485
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Plaintiff MedImpact
   Healthcare Systems, Inc.

6

7

FILED

08 MAR 28 PH 2: 13

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:      CP            DEPUTY

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  MEDIMPACT HEALTHCARE SYSTEMS,        Case No. 08 CV 0590 BTM CAB
    INC., a California corporation,
12
          Plaintiff,                     COMPLAINT FOR
13                                        (1) MISAPPROPRIATION OF TRADE
    v.                                    SECRETS; (2) INTENTIONAL
14                                        INTERFERENCE WITH PROSPECTIVE
    SXC HEALTH SOLUTIONS, INC., an        ECONOMIC ADVANTAGE;
15  Illinois corporation;                 (3) NEGLIGENT INTERFERENCE WITH
    RICHARD SCOT GIAMBRUNO, an            PROSPECTIVE ECONOMIC
16  individual;                           ADVANTAGE; (4) UNFAIR
    THOMAS N. TABBACK, an individual; and COMPETITION – CAL. BUS. & PROF.
17  INDEPENDENCE HEALTH STRATEGIES,       CODE § 17200, ET SEQ.; AND
    a Florida limited liability company,  (5) INJUNCTIVE RELIEF
18
          Defendants.                     DEMAND FOR JURY TRIAL
19

20

21        Plaintiff MedImpact Healthcare Systems, Inc. hereby sues Defendants SXC Health

22  Solutions, Inc., Richard Scot Giambruno, Thomas N. Tabback, and Independence Health

23  Strategies, LLC, and alleges as follows:

24                              **THE PARTIES**

25        1.      Plaintiff MedImpact Healthcare Systems, Inc. ("MedImpact") is, and at all relevant

26  times herein was, a privately held California corporation with its principal place of business in the

27  County of San Diego, State of California.  MedImpact provides full service Pharmacy Benefits

28  Management ("PBM") services to its clients.  MedImpact is an industry leader in the PBM arena.

1

2.     MedImpact is informed and believes, and based thereon alleges, that Defendant SXC Health Solutions, Inc. ("SXC") is a corporation organized under the laws of Illinois with its principal place of business in Lombard, Illinois. MedImpact is further informed and believes, and based thereon alleges, that SXC is in the business of providing PBM services to customers throughout the United States, including this judicial district. SXC is a direct competitor with MedImpact.

3.     MedImpact is informed and believes, and based thereon alleges, that Defendant Richard Scot Giambruno ("Giambruno") is an individual residing in and a citizen of the state of Florida.

4.     MedImpact is informed and believes, and based thereon alleges, that Defendant Thomas N. Tabback ("Tabback") is an individual residing in and a citizen of the state of Texas.

5.     MedImpact is informed and believe, and based thereon alleges, that Defendant Independence Health Strategies, LLC is a limited liability company organized and existing under the laws of Florida with is principal place of business in Ponte Vedra Beach, Florida. MedImpact is further informed and believes, and based thereon alleges, that Giambruno and Tabback are the Managing members of Independence Health Strategies.

6.     MedImpact is informed and believes, and on that basis alleges, that at all times mentioned herein, each and every Defendant was the agent, servant, employee, joint venturer, partner, subsidiary, and/or co-conspirator of each other Defendant, and that, in performing or failing to perform the acts herein alleged, each was acting individually as well as through and in the foregoing alleged capacity and within the course and scope of such agency, employment, joint venture, partnership, subsidiary and/or conspiracy, and each other Defendant ratified and affirmed the acts and omissions of the other Defendant. MedImpact is further informed and believe that each Defendant, in taking the actions alleged herein and/or ratifying the actions alleged herein, acted within the course and scope of such authority and, at the same time, for their own financial and individual advantage, as well as in the course and scope of such employment, agency and as an alter ego therein.

7.     Whenever, in this Complaint, reference is made to any actions of SXC, such

2

1   allegations shall mean that the directors, officers, employees or agent of said entity did perform or

2   authorize the alleged acts or actively engaged in the management, direction and control of such

3   entity and were acting within the course and scope of their employment.   Whenever, in this

4   Complaint, reference is made to any actions of Independence Health Strategies, such allegations

5   shall mean that the directors, officers, employees or agent of said entity did perform or authorize

6   the alleged acts or actively engaged in the management, direction and control of such entity and

7   were acting within the course and scope of their employment.

8                              **GENERAL ALLEGATIONS**

9        8.      Giambruno worked for MedImpact from August 7, 2006 until December 19, 2007.

10  At the time of his voluntary resignation from the company in December 2007, he served as

11  Business Development Director. Tabback was employed by MedImpact from September 12, 2005

12  to December 20, 2007.   At the time of his voluntary resignation from the company, also in

13  December 2007, he served as Regional Director.   While working at MedImpact, and in the course

14  and scope of their employment, Giambruno and Tabback were granted access to highly sensitive

15  proprietary information, including information pertaining to MedImpact's customers and accounts,

16  pricing structures, reports, processes, business methods, identities of key contacts within the

17  industry, information regarding the unique needs and preferences of particular customers and

18  prospective customers, and other information which is not obtainable from public sources.  Said

19  proprietary information resulted from years of hard work, information gathering and trial and error

20  by MedImpact.

21       9.      MedImpact maintains the secrecy of its proprietary information by executing

22  confidentiality agreements with all employees, independent contractors, and all other parties

23  provided with MedImpact's confidential information.  In addition, MedImpact uses firewalls,

24  private networks, and other technical mechanisms to ensure the security of MedImpact's

25  confidential information.  MedImpact maintains password protection on its company computers.

26  MedImpact also requires badges and other security mechanisms to control access to MedImpact's

27  facility so as to safeguard its confidential and proprietary information.  MedImpact also instructs

28  and repeatedly reminds its employees that the above information should be protected from

3

1   disclosure to competitors, such as SXC. As a privately held company, MedImpact has less

2   mandatory disclosure obligations to, for instance, shareholders and regulators, allowing

3   MedImpact greater control over its trade secret and competitive information.

4         10.   MedImpact also employs a confidentiality reminder that "pops up" on company

5   computers each time an employee logs on to the network. MedImpact's reminder screen states: "I

6   acknowledge that this PC belongs to MedImpact and is to be used primarily for business purposes.

7   While I may use the equipment for limited personal use it may be subject to monitoring. There is

8   no expectation of privacy for use of this PC and its use is authorized only in accordance with the

9   IT system use policy. I acknowledge that using this PC for inappropriate activities including

10   sending pornographic or other inappropriate emails, surfing pornographic or inappropriate Internet

11   sites is strictly prohibited."

12         11.   At the commencement of and during their employment, and as part of MedImpact's

13   efforts to protect its proprietary information, Giambruno and Tabback agreed to and did sign

14   confidentiality agreements and acknowledgments, wherein they agreed to hold the company's

15   proprietary information in confidence and to not disclose such information to third parties. During

16   their tenure with MedImpact, both gentlemen acknowledged their obligation to protect the

17   company's confidential and proprietary information and agreed to protect the same.

18         12.   On December 7, 2007, Tabback tendered his voluntary resignation and advised he

19   was leaving to pursue a "lifelong dream" of writing a novel, which is very different from the PBM

20   industry. Two days later, on December 9, 2007, Giambruno tendered his voluntary resignation to

21   MedImpact. Both gentlemen were reminded, in writing, of their obligations to maintain inviolate

22   the trade secrets and confidential and proprietary information they learned by virtue of their

23   employment with MedImpact. Both Giambruno and Tabback, however, refused to sign departing

24   paperwork required of the company including a Continuing Obligations Memorandum

25   summarizing the protocols incumbent upon departing MedImpact employees and a Termination

26   Certification regarding the company's confidential and proprietary information. Giambruno flat

27   out refused to participate in an exit interview that is standard procedure at MedImpact, with the

28   proffered reasons that he did not want to sign the paperwork required of him and that the exit

1    interview conflicted with his "tee time."

2         13.    Immediately preceding and at the time they resigned from the company, both

3    Giambruno and Tabback were intimately involved in a proposal for PBM services to MedImpact

4    customer Ceres Strategies.   In fact, as of the final day of employment of both gentlemen

5    MedImpact had by and large secured the Ceres Strategies account; contract execution formalities

6    were all that remained to be done.   Ceres Strategies was a potentially lucrative account for

7    MedImpact.   MedImpact invested a substantial amount of time and resources procuring the

8    account and stood to receive significant benefit over the course of the relationship.

9         14.    SXC is a direct competitor of MedImpact.   SXC and MedImpact also have the

10   identical or similar market segments and lines of business.

11        15.    After Giambruno and Tabback left MedImpact, the company's negotiations with

12   Ceres Strategies came to an abrupt halt.   Ceres Strategies refused and continues to refuse to

13   engage in any sort of dialogue with MedImpact, and has ignored the company's efforts to finalize

14   the contract.

15        16.    MedImpact is informed and believes, and based thereon alleges, that Giambruno

16   and Tabback have diverted the Ceres Strategies account either to SXC, a direct competitor of

17   MedImpact, or to the separate competing venture that Giambruno and Tabback created while still

18   employed by MedImpact.  MedImpact is informed and believes, and based thereon alleges, that in

19   doing so Giambruno and Tabback have wrongfully used confidential and proprietary information

20   belonging to MedImpact, including information related to key contacts at Ceres Strategies and

21   particular customer preferences.

22        17.    Forensic examination of the computers used by Giambruno and Tabback while

23   employed by MedImpact reveals that the two gentlemen hatched a scheme for a competing PBM

24   and/or PBM consulting venture at least as early as November 2007.  A power point presentation

25   outlining the services for an entity known as "Independence Health Strategies, LLP," created on

26   November 18, 2007, was located on the hard drive of Tabback's computer.  It describes a business

27   venture that offers the following "Pharmacy Management Solutions": claims adjudication;

28   provider network contracting; pharmaceutical contracting; and clinical management services.

These are the very same services that MedImpact provides as a PBM. It bears repeating that the power point presentation was created by Tabback on his MedImpact computer. Tabback thus used MedImpact time and resources for his own competing endeavors and gain, to the detriment of MedImpact. MedImpact is informed and believes, and based thereon alleges, that Tabback spent a considerable amount of time developing the competing venture while employed by MedImpact and using MedImpact resources. However, MedImpact is informed and believes, and based thereon alleges, that prior to leaving the company Tabback "scrubbed" his hard drive in an unsuccessful effort to conceal his wrongdoing.

18. MedImpact is informed and believes, and based thereon alleges, that the business platform for Independence Health Strategies is based upon confidential and proprietary information belonging to MedImpact that Giambruno and/or Tabback wrongfully misappropriated for their own use, including but not limited to information related to MedImpact's business plans, methods and processes, contract pricing and pricing structures.

19. On November 27, 2007, Giambruno and Tabback took the next step toward perfecting their competing venture by registering "Independence Health Strategies" as a limited liability company with the Florida Secretary of State. A true and correct copy of the Articles of Incorporation for Independence Health Strategies is attached hereto as Exhibit 1. Giambruno and Tabback are identified as the Managing Members of Independence Health Strategies, and the stated purpose of the business is "healthcare consulting," which directly contradicts Tabback's representation at the time of his resignation that he left the company to pursue an unrelated "lifelong dream."

20. MedImpact's forensic examination further revealed a business plan for a competing venture located on the hard drive of Tabback's computer. Although Tabback attempted to delete the document prior to his departure from the company, MedImpact's forensic analysts were able to retrieve the document from a hidden folder. The metadata indicates that the business plan was created by Mike Meyer, SXC's Senior Vice-President of Sales and Marketing on December 5, 2007, just a few days before Giambruno and Tabback tendered their resignations.

21. An e-mail exchange between Giambruno on December 3, 2007 preceding the

6

1   business plan referenced above is also revealing, with Giambruno declaring "Today is a going to

2   be a great day for Independence[.]  So many metaphors can be taken from our name!"  Shortly

3   thereafter, both Giambruno and Tabback tendered their resignations.

4        22.    In February 2008, MedImpact received a report that Giambruno and Tabback had

5   approached existing MedImpact client in Georgia with a solicitation for their new business.

6   MedImpact is informed and believes, and based thereon alleges, that Giambruno and Tabback

7   outlined a "new venture" they were starting that would consist of a consulting company that

8   directed business to SXC, as well as an independent PBM.  Tabback was the account executive on

9   that account while employed at MedImpact.  MedImpact is informed and believes, and based

10  thereon alleges, that Giambruno and Tabback's solicitation of MedImpact's customer was based

11  upon confidential and proprietary information belonging to MedImpact, including client contact

12  information, pricing structure and preferences.

13       23.    In March 2008, MedImpact received an additional report that Giambruno and

14  Tabback had solicited the business of yet another MedImpact customer in Missouri, utilizing

15  confidential and proprietary information from a territory spreadsheet utilized by Giambruno while

16  employed at MedImpact.

17       24.    MedImpact is informed and believes, and based thereon alleges, that the wrongful

18  misappropriation of trade secrets, unfair competition and other wrongful acts by Giambruno,

19  Tabback, Independence Health Strategies and SXC represent a mere tip of the iceberg, and that all

20  Defendants have engaged in a pattern and practice of using MedImpact's confidential and

21  proprietary information to unlawfully compete with MedImpact and to otherwise injure its status

22  and reputation in the PBM industry.

23       25.    MedImpact has demanded that Giambruno, Tabback and SXC cease and desist

24  from using MedImpact's confidential and proprietary information and return the same to

25  MedImpact, but Defendants have refused to do so.

26  / / /

27  / / /

28  / / /

7

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between the Plaintiff and all Defendants and the amount in controversy exceeds the sum of $75,000.00.

27.     Venue is proper in this district under 28 U.S.C. § 1391, because a substantial part of the acts of trade secret misappropriation, unfair competition and interference with economic relationships complained of herein have occurred and are occurring in this judicial district.

## FIRST CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS

### (Against All Defendants)

28.     MedImpact hereby incorporates by this reference Paragraph 1 through 27, inclusive, as if set forth fully herein.

29.     At all times relevant herein, MedImpact was in possession of trade secrets in its confidential and proprietary information related to its customers and accounts, including unique customer preferences, contracts, pricing structures, reports, processes, presentations, business methods and plans, marketing and business plans, identities of key contacts within the industry, and other information which is not obtainable from public sources.  This information has economic value in that it enables MedImpact to offer and provide Pharmacy Benefits Management services customized to the unique needs and circumstances of each customer.  Said information is not generally known to the public or to the managed pharmacy benefits industry, and derives independent economic value from not being known to the general public or to the relevant industry.

30.     MedImpact has expended a significant amount of time and resources in developing its proprietary information.  In addition, MedImpact goes to great lengths to protect the secrecy of this information by executing confidentiality agreements with all employees, independent contractors, and all other parties provided with MedImpact's confidential information, maintaining firewalls, private networks, and other technical mechanisms to ensure the security of MedImpact's confidential information, labeling certain written communications as confidential, employing

1  passwords and "pop up" screens reminding its employees of their confidentiality obligations and

2  several other security mechanisms to protect MedImpact's confidential information.

3      31.    MedImpact is informed and believes, and based thereon alleges, that in or about

4  November or December 2007, Giambruno and Tabback misappropriated MedImpact's

5  confidential and proprietary information and converted the same to their own use in their

6  competing venture, Independence Health Strategies, and diverted the same to SXC, a direct

7  competitor of MedImpact which solicited and established a consulting, employment or other form

8  of business relationship with Giambruno, Tabback and Independence Health Strategies, as set

9  forth herein.

10      32.    MedImpact is informed and believes, and based thereon alleges, that SXC knew or

11  should have known that the information provided by Giambruno and Tabback was taken from and

12  belonged to MedImpact.  MedImpact is further informed and believes, and based thereon alleges,

13  that SXC willingly accepted information from Giambruno and Tabback that it did not otherwise

14  have, and solicited Giambruno and Tabback for information knowing that it came from

15  MedImpact.  MedImpact is further informed and believes, and on that basis alleges, that SXC

16  performed no due diligence to ensure that Giambruno and Tabback did not share confidential

17  MedImpact information with SXC and actually encouraged Giambruno and Tabback to

18  misappropriate MedImpact information for the benefit of SXC.

19      33.    As a proximate result of Defendants' acts as alleged herein, MedImpact has

20  suffered damages, and will continue to suffer damages, unless Defendants are enjoined from using

21  the confidential trade secret information they misappropriated and ordered to immediately return

22  said information, and unless MedImpact obtains actual damages consisting of the loss of

23  customers and revenues in an amount to be proven at trial.

24      34.    Defendants, in engaging in the aforementioned acts, are guilty of malice and

25  oppression in that they deliberately intended to harm MedImpact's business and improve their

26  own by misappropriation and acted in conscious disregard of MedImpact's rights.  Defendants'

27  conduct therefore warrants the assessment of punitive damages in an amount appropriate to punish

28  Defendants and deter others from engaging in similar conduct.

9

35.    Defendants wrongful conduct in misappropriating MedImpact's confidential customer and competitive business information and disclosing and utilizing said information will continue unless and until enjoined and restrained by order of this Court.  Without such Court intervention, Defendants' conduct in misappropriating MedImpact's proprietary information will cause great and irreparable injury to MedImpact's business, in that MedImpact has lost and will continue to lose existing and potential clientele and customers.

36.    MedImpact has no adequate remedy at law for the injuries currently being suffered in that Defendants will continue to wrongfully solicit MedImpact's existing and potential clientele and customers and utilize information that was wrongfully misappropriated from MedImpact, including but not limited to customer information that is not generally available to the public at large.  MedImpact is entitled to a temporary, preliminary and permanent injunction against Defendants as prayed herein.

37.    MedImpact is informed and believes, and on that basis alleges, that Defendants' conduct was, and is, malicious, fraudulent, deliberate and willful.  MedImpact is therefore entitled to recover from Defendants exemplary damages in the amount twice the total of the damages recovered for actual loss as permitted by the California Civil Code §3426.3.

38.    MedImpact is also entitled to an award of attorneys' fees pursuant to California Civil Code § 3426.4.

**SECOND CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against All Defendants)**

39.    MedImpact hereby incorporates by this reference Paragraph 1 through 38, inclusive, as if set forth fully herein.

40.    MedImpact is informed and believes, and based thereon alleges, that as a result of Defendants' conduct in misappropriating MedImpact's confidential customer and business information and using the same to solicit existing and potential MedImpact customers, which has had the effect and shall have the effect of interfering with MedImpact's economic relationships with existing and potential clientele, MedImpact has been damaged in an amount to be established

1     according to proof at trial.

2          41.     MedImpact is informed and believes, and based thereon alleges, that Defendants'

3     wrongful acts will continue to cause injury to MedImpact and that such injury will continue unless

4     enjoined and restrained by this Court.

5          42.     MedImpact is informed and believes, and based thereon alleges, that the acts of

6     Defendants alleged herein were willful, oppressive, fraudulent, despicable and in conscious

7     disregard of the rights of MedImpact and the resulting harm to MedImpact.  Defendants are liable

8     for punitive and exemplary damages in amount to be established according to proof at time of

9     trial.

10                      **THIRD CAUSE OF ACTION**

11   **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

12                         **(Against All Defendants)**

13          43.     MedImpact hereby incorporates by this reference Paragraph 1 through 41,

14     inclusive, as if set forth fully herein.

15          44.     As set forth above, economic and ongoing business relationships existed and exist

16     between MedImpact and its clientele and customers containing an existing and probable future

17     economic benefit or advantage to MedImpact.

18          45.     Defendants knew of the existence of the economic and business relationships

19     between MedImpact and its clientele and customers by virtue of Giambruno's and Tabback's

20     former employment with MedImpact.  Defendants also knew of the existence of MedImpact's

21     relationships by virtue of the documents drafted by SXC relating to Tabback and Giambruno's

22     new venture and client and account information shared with SXC.

23          46.     MedImpact is informed and believes, and based thereon alleges, that Defendants

24     were negligent in that they knew or should have known that Giambruno and Tabback owed a duty

25     to MedImpact to maintain the confidentiality and secrecy of MedImpact's proprietary customer

26     and competitive business information, yet violated that duty resulting in the misappropriation of

27     said information and the interference and disruption by Defendants with the actual and prospective

28     economic and business relationships between MedImpact and its clientele and customers.

47.    Because the economic relationships between MedImpact and its clientele and customers were interfered with and disrupted by Defendants, and as a proximate result of Defendants' acts as alleged herein, MedImpact has suffered damages and will continue to suffer damages consisting of the loss of customers and revenues in an amount to be proven at trial, unless Defendants are enjoined.

### FOURTH CAUSE OF ACTION

### UNFAIR COMPETITION – CAL. BUS. & PROF. CODE § 17200, ET SEQ.

### (Against All Defendants)

48.    MedImpact hereby incorporates by this reference Paragraph 1 through 47, inclusive, as if set forth fully herein.

49.    The actions of Defendants described herein in misappropriating MedImpact's confidential customer and competitive business information, and other information and property that belonged to MedImpact, and unfairly and fraudulently soliciting existing and potential customers of MedImpact, constitutes unlawful, unfair and fraudulent business acts and practices, in violation of California Business & Professions Code §§ 17200, et seq. ("UCL"). Giambruno and Tabback further engaged in unfair and fraudulent business practices by undertaking efforts to establish a competing venture while still employed by MedImpact using both time and resources, including power point presentations and other MedImpact proprietary information such as business methods, plans and processes, target lists, etc., that should have been devoted to their duties and responsibilities as employees of MedImpact. Giambruno, Tabback and SXC further usurped relationships that MedImpact expended substantial time and resources cultivating with its customers and clients.

50.    As a direct result of Defendants' acts of unfair competition under the UCL, MedImpact has suffered and will continue to suffer harm as described herein, and such harm will continue unless the Court enjoins and restrains Defendants' actions.

51.    Defendants should be required to restore to MedImpact any and all of MedImpact's confidential, trade secret information and any other information of MedImpact in Defendants' possession, custody or control. MedImpact also seeks injunctive relief to stop SXC from unfairly

1    soliciting MedImpact's current and potential customers.  Further, MedImpact seeks injunctive

2    relief for the return of its information wrongfully obtained through appropriate restitution and any

3    other property wrongfully taken.

4        52.    As a proximate and legal result of Defendants' wrongful conduct, MedImpact has

5    been damaged in its business relationships with potential and existing clientele and customers, and

6    has suffered harm in the form of lost sales, loss of reputation, loss of the ability to control access

7    to its trade secrets and loss of goodwill.  As detailed herein, MedImpact seeks an order granting

8    MedImpact and the general public relief from Defendants' deceptive, unfair and fraudulent trade

9    practices.

10                    **FIFTH CAUSE OF ACTION**

11                      **INJUNCTIVE RELIEF**

12                    **(Against All Defendants)**

13        53.    MedImpact hereby incorporates by this reference Paragraph 1 through 52,

14    inclusive, as if set forth fully herein.

15        54.    Beginning at least as early as November 2007, and continuing to the present time,

16    Defendants wrongfully and unlawfully misappropriated confidential and proprietary information

17    belonging to MedImpact, as described in greater detail herein, and unfairly solicited existing and

18    potential customers of MedImpact.

19        55.    MedImpact has demanded that Defendants stop their wrongful conduct and return

20    MedImpact's confidential and proprietary information.  Defendants have refused and continue to

21    refuse to refrain from their misconduct, and prompt judicial action is therefore necessary to protect

22    MedImpact's interest in and control over its intellectual property and to stop Defendants' unfair

23    competition.

24        56.    MedImpact has no adequate remedy at law for the injuries already suffered and

25    likely to be suffered as a result of Defendants' wrongful actions, as it will be impossible for

26    MedImpact to determine the precise amount of damages it will suffer if Defendants' conduct is not

27    restrained.  Moreover, if Defendants are not enjoined it will be impossible for MedImpact to

28    maintain control over its intellectual property and to prevent further disclosure of its highly

1 confidential and proprietary information to third parties. Monetary damages will not sufficiently

2 compensate MedImpact for the losses sustained as a result of Defendants' wrongful acts.

3      57.    As a proximate result of Defendants' acts as alleged herein, MedImpact has

4 suffered damages, and will continue to suffer damages, unless Defendants are enjoined from using

5 the confidential trade secret information that was misappropriated and ordered to return said

6 information.

7 **PRAYER FOR RELIEF**

8     WHEREFORE, MedImpact demands judgment against Defendants as follows:

9     1.    For compensatory damages, according to proof, with interest thereon as provided

10 by law;

11     2.    For consequential and actual damages, according to proof, or disgorgement of

12 Defendants' profits unjustly obtained and/or a reasonable royalty, with interest thereon as

13 provided by law;

14     3.    For exemplary damages;

15     4.    For injunctive relief;

16     6.    For its attorneys' fees;

17     7.    For costs of suit as provided for by law; and

18     8.    For such other relief as the Court deems just and proper.

19 DATED: March 28, 2008          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

20

21 By: _____

22     Andrea M. Kimball
    Michelle A. Herrera

23     Attorneys for Plaintiff MedImpact Healthcare
    Systems, Inc.

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2       Plaintiff MedImpact Healthcare Systems, Inc. hereby demands a trial by jury pursuant to

3   Rule 38 of the Federal Rules of Civil Procedure.

4   DATED: March 28, 2008              LUCE, FORWARD, HAMILTON & SCRIPPS LLP

5

6                                     By: _____

7                                        Andrea M. Kimball
                                         Michelle A. Herrera
                                         Attorneys for Plaintiff MedImpact Healthcare
8                                        Systems, Inc.

9

10

11  101081265.3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Table of Contents**
<u>**Exhibits**</u>

2

<u>Pages</u>

3

Exhibit 1

Copy of the Articles of Incorporation for Independence Health Strategies          18-19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 1

# Electronic Articles of Organization
## For
# Florida Limited Liability Company

L07000118270
FILED 8:00 AM
November 27, 2007
Sec. Of State
nculligan

## Article I

The name of the Limited Liability Company is:

INDEPENDENCE HEALTH STRATEGIES, LLC.

## Article II

The street address of the principal office of the Limited Liability Company is:

837 BAYTREE LANE
PONTE VEDRA BEACH, FL. US  32082

The mailing address of the Limited Liability Company is:

837 BAYTREE LANE
PONTE VEDRA BEACH, FL. US  32082

## Article III

The purpose for which this Limited Liability Company is organized is:

HEALTHCARE CONSULTING.

## Article IV

The name and Florida street address of the registered agent is:

SCOT  GIAMBRUNO
837 BAYTREE LANE
PONTE VEDRA BEACH, FL.  32082

Having been named as registered agent and to accept service of process
for the above stated limited liability company at the place designated
in this certificate, I hereby accept the appointment as registered agent
and agree to act in this capacity.  I further agree to comply with the
provisions of all statutes relating to the proper and complete performance
of my duties, and I am familiar with and accept the obligations of my
position as registered agent.

Registered Agent Signature:  SCOT GIAMBRUNO

**Exhibit 1**
**Page 18**

## Article V

The name and address of managing members/managers are:

Title:  MGRM
SCOT  GIAMBRUNO
837 BAYTREE LANE
PONTE VEDRA BEACH, FL.  32082  US

Title:  MGRM
TOM  TABBACK
12 WHITE MAGNOLIA CIRCLE
LAKEWAY, TX.  78734  US

## Article VI

The effective date for this Limited Liability Company shall be:

11/26/2007

Signature of member or an authorized representative of a member

Signature: R. SCOTLEN GIAMBRUNO

L07000118270
FILED 8:00 AM
November 27, 2007
Sec. Of State
nculligan

**Exhibit 1**
**Page 19**

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 149197    — SH**

**March 28, 2008**
**14:14:42**

**Civ Fil Non—Pris**
USAO #.: 08CV0590
Judge..: BARRY T MOSKOWITZ
Amount.:                    $350.00 CK
Check#.: BC37707

**Total—> $350.00**

FROM: MEDIMPACT V. SXC HEALTH SOLUTI

JS 44 (Rev. 12/07)     **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| **I. (a) PLAINTIFFS**<br>MEDIMPACT HEALTHCARE SYSTEMS, INC. | **DEFENDANTS**<br>SXC HEALTH SOLUTIONS, INC., an Illinois corporation; RICHARD SCOT GIAMBRUNO, an individual; THOMAS N. TABBACK, an individual; and INDEPENDENCE HEALTH STRATEGIES, a Florida limited liability company, |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff <u>San Diego</u><br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant <u>DuPage County, Illinois</u><br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>Andrea M. Kimball, State Bar No. 196485<br>Luce, Forward, Hamilton & Scripps LLP<br>600 West Broadway, Suite 2600<br>San Diego, CA 92101<br>Tel: 619.236.1414; Fax: 619.645.5323 | Attorneys (If Known)<br>Clifford E. Berman, Senior Vice President and General Counsel<br>SXC Health Solutions, Inc.<br>2441 Warrenville Road, Suite 610<br>Lisle, Illinois 60532<br>Tel: 630.268.3600; Fax: 630.577.3101<br><br>'08 CV 0590 BTM CAB |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br><br>**PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus - Alien Detainee<br>☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):<br>Diversity - 28 U.S.C. section 1332.<br>Brief description of cause:<br>Misappropriation of trade secrets; intentional interference with prospective economic advantage; negligent interference with prospective economic advantage; unfair competition and injunctive relief. |
|---|---|
| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23      DEMAND $      CHECK YES only if demanded in complaint:<br>JURY DEMAND: ☒ Yes ☐ No |
| **VIII. RELATED CASE(S) IF ANY** | (See instructions):      JUDGE _____      DOCKET NUMBER _____ |

| DATE<br>March 28 2008 | SIGNATURE OF ATTORNEY OF RECORD<br>Andrea M. Kimball |
|---|---|

FOR OFFICE USE ONLY

RECEIPT # 149147      AMOUNT $350      APPLYING IFP _____      JUDGE _____      MAG. JUDGE _____

CR      3/28/08

American LegalNet, Inc.<br>www.FormsWorkflow.com