1  Andrea M. Kimball, State Bar No. 196485
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Plaintiff MedImpact
   Healthcare Systems, Inc.

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  MEDIMPACT HEALTHCARE SYSTEMS, INC., a California corporation, | Case No. 08-CV-0590 BTM(CAB) |
| 12       Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF MEDIMPACT HEALTHCARE SYSTEMS, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| 13  v. | |
| 14  SXC HEALTH SOLUTIONS, INC., an Illinois corporation; RICHARD SCOT GIAMBRUNO, an individual; THOMAS N. TABBACK, an individual; and INDEPENDENCE HEALTH STRATEGIES, a Florida limited liability company, | |
| 18       Defendants. | |

20

21     Plaintiff MedImpact Healthcare Systems, Inc. ("MedImpact") submits the following

22  memorandum of points and authorities in opposition to Defendants Richard Scot Giambruno,

23  Thomas N. Tabback and Independence Health Strategies, LLC's motion to dismiss pursuant to

24  Federal Rule of Civil Procedure 12(b)(6).

25  / / /

26  / / /

27  / / /

28  / / /

# I.

## INTRODUCTION

Defendants' motion to dismiss must be denied, because it is based upon the misguided premise that MedImpact's First Amended Complaint ("FAC") only alleges the misappropriation of trade secrets by Defendants, and nothing more. A plain reading of the FAC reveals that is far from the case. The FAC alleges a host of other wrongful conduct by Defendants that has nothing at all to do with their misappropriation of trade secrets, including the solicitation of existing and potential MedImpact customers, the use of MedImpact time and resources to create a competing venture while still employed by MedImpact and negotiating and sharing information with a direct competitor while still employed at MedImpact.

Defendants cannot selectively pick and choose among the various well-grounded and detailed allegations in the FAC in an effort to fit their entire course of wrongful conduct within the framework of the California Uniform Trade Secrets Act, thereby avoiding liability for the additional claims alleged by MedImpact. MedImpact has pleaded far more facts than Federal Rule of Civil Procedure 8 requires, and has pleaded claims that seek redress for conduct separate and apart from Defendants' misappropriation of trade secrets. Defendants cannot simply pick one claim to defend and argue the others are preempted by the trade secret claim. With different theories come different sources of proof and different damage calculations.[1] MedImpact is entitled to give a short and plain notice of its claims as well as pursue alternative theories of liability. Defendants' motion to dismiss is premature and is more properly the subject of a motion for summary judgment after all relevant facts are developed through discovery.

MedImpact's interference, unfair competition and injunctive relief claims are not based on the identical nucleus of facts as those alleged in its claim for misappropriation of trade secrets, and Defendants' motion to dismiss should therefore be denied.

/ / /

---

[1]  For example, in the unlikely event that MedImpact is unable to prove that it has protectable trade secrets, it may nonetheless pursue claims against Defendants for improperly diverting the company's information and resources to unfairly compete and to interfere with MedImpact's business relationships.

1

## II.

## STATEMENT OF FACTS

As alleged in the First Amended Complaint ("FAC"), MedImpact is a national company with its headquarters in San Diego. MedImpact is an industry leader in the Pharmacy Benefits Management ("PBM") field. (FAC, ¶ 1.) Defendants Giambruno and Tabback worked for MedImpact as the company's Business Development Director and Regional Director, respectively. (FAC, ¶8.) Both gentlemen were high level employees, involved in the marketing and sale of MedImpact's PBM services to existing and potential clients. Although MedImpact's corporate headquarters is San Diego, both gentlemen worked remotely, out of state. In connection with their job duties, Giambruno and Tabback were granted access to a vast amount of confidential, sensitive and proprietary information belonging to MedImpact, including information pertaining to MedImpact's customers and accounts, pricing structures, reports, processes, business methods, identities of key contacts within the industry, information regarding the unique needs and preferences of particular customers and prospective customers, and other information which is not publicly known. (FAC, ¶ 8.) MedImpact vigorously protects its trade secrets and reminds its employees to protect proprietary information. (*See e.g.*, FAC, ¶¶ 9-10.)

Giambruno and Tabback abruptly tendered their resignations in early December 2007. (FAC, ¶ 12.) Unbeknownst to MedImpact, both gentlemen had been working together to develop a competing business prior to their departure. (FAC, ¶ 17.) Not only were they using MedImpact's confidential and proprietary information to develop that venture, Independence Health Strategies, LLC, but they did so on the company's dime and using other resources belonging to the company. (FAC, ¶ 17.) Giambruno and Tabback wined and dined their future clients with MedImpact funds and also spent time that should have been devoted to their employer, MedImpact, developing a relationship with SXC Health Solutions, Inc. ("SXC"), a direct competitor of MedImpact. (FAC, ¶ 20.)

Defendants also attempted to divert the business of at least four existing or potential MedImpact clients to themselves and/or to their new employer, SXC. (FAC, ¶¶ 15, 22, 23.) Before Giambruno and Tabback left the company, potential MedImpact customer Ceres Strategies

1    was ready to sign a PBM contract with MedImpact. Immediately after their departure, Ceres

2    began ignoring MedImpact and abruptly ceased responding to e-mails or returning phone calls.

3    (FAC, ¶ 15.) Giambruno and Tabback were in charge of that account and MedImpact believes

4    they bad-mouthed MedImpact, undercut MedImpact's pricing and usurped a very lucrative

5    corporate opportunity. Forensic computer information indicates that Giambruno and Tabback

6    teamed up with SXC long before they left MedImpact, promising contracts based on their sales at

7    MedImpact. A search of Tabback's computer recovered a devious business plan called

8    "Independence Day," deleted in a hidden folder. (FAC, ¶ 20.) The metadata indicates SXC at

9    least helped Giambruno and Tabback draft documents to set up their new venture, known as

10   "Independence Health Strategies."

11        MedImpact is informed and believes that Tabback and Giambruno now work for or with

12   SXC, a direct competitor of MedImpact. MedImpact has suffered millions of dollars in damages

13   as a result of Defendants' egregious conduct. (FAC, ¶16.)

14        Based upon the foregoing facts, MedImpact's First Amended Complaint alleges five

15   separate causes of action against Defendants: (1) Misappropriation of Trade Secrets;

16   (2) Intentional Interference with Prospective Economic Advantage; (3) Negligent Interference

17   with Prospective Economic Advantage; (4) Unfair Competition; and (5) Injunctive Relief. As set

18   forth in greater detail below, not all of these claims are based upon Defendants' misappropriation

19   of trade secrets, and Defendants' motion to dismiss should therefore be denied.

20                                          **III.**

21                              **AUTHORITY AND ARGUMENT**

22   **A.      Legal Standards**

23        **1.      Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

24        A motion to dismiss for failure to state a claim should be granted only when a party fails to

25   meet the requirements of Federal Rule of Civil Procedure 8(a), which requires a "short and plain

26   statement of the claim showing that the pleader is entitled to relief." A dismissal is warranted only

27   when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

28   which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In resolving a

1   Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to

2   plaintiff, accept all well-pleaded factual allegations as true, and determine whether the plaintiff

3   can prove any set of facts to support a claim that would merit relief. *See Pareto v. FDIC*, 139 F.3d

4   696, 699 (9th Cir. 1998); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). In

5   taking the factual allegations of the initial pleading as true, the court must only find that defendant

6   is given fair notice of the grounds of the claims asserted. *See Conley*, 355 U.S. at 47; *Parks Sch.*

7   *of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

8         Even if dismissal is warranted, leave to amend should be granted unless it appears that the

9   pleading can prove no set of facts to warrant relief. *Conley*, 355 U.S. at 45-46. *See also Cook,*

10  *Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (plaintiff should be

11  granted leave to amend "unless it determines that the pleading could not possibly be cured by the

12  allegation of other facts"). Here, it is clear that MedImpact is entitled to relief under more than

13  one claim pled.

14        **2.**     **Preemption Under the California Uniform Trade Secrets Act**

15        The California Uniform Secrets Act ("CUTSA") explicitly states that it does not preempt

16  claims that derive from "other civil remedies that are not based upon misappropriation of a trade

17  secret[.]" Cal. Civ. Code § 3426.7(b). Consistent with this principle, federal courts acknowledge

18  that the CUTSA only preempts other claims when those claims are "based on the identical nucleus

19  of facts as those alleged in the misappropriation claim." *Digital Envoy, Inc. v. Google, Inc.*, 370

20  F. Supp. 2d 1025, 1034 (N.D. Cal. 2005).

21        It is ***only*** where a plaintiff alleges state law claims that are based on ***facts identical*** to its

22  trade secret claim that the state law claims are preempted. *See e.g., Silicon Image, Inc. v. Analogix*

23  *Semiconductor, Inc.*, 2007 U.S. Dist. LEXIS 39599 at *28 (N.D. Cal. May 16, 2007) (interference

24  claims that are based on facts that go beyond the misappropriation of trade secrets are not

25  preempted by the CUTSA); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1131 (N.D. Cal.

26  2001); (plaintiff's claim of unfair competition not preempted by trade secrets claim); *Terarecon,*

27  *Inc. v. Fovia, Inc.*, 2006 U.S. Dist. LEXIS 48833 at *29 (N.D. Cal. July 6, 2006) (plaintiff may

28  maintain conversion claim based on conversion of property not rising to the level of a trade

1   secret); *PostX Corp. v. Secure Data in Motion, Inc.*, 2004 U.S. Dist. LEXIS 24260 at *12-13

2   (plaintiff may plead conversion as an alternative to misappropriation of trade secrets).

3   **B.   None of MedImpact's Claims are Preempted by the CUTSA**

4   None of MedImpact's claims are preempted by the CUTSA. The company's claims for

5   interference, unfair competition and injunctive relief are based on Defendants' unlawful actions

6   that extend far beyond their misappropriation of trade secrets. Defendants' solicitation and

7   attempted diversion of existing and potential MedImpact customers and their use of MedImpact

8   time and resources to create a competing venture and take customers ***do not*** arise from the same

9   nucleus of facts as their misappropriation of trade secrets. Moreover, MedImpact believes that

10  Giambruno and Tabback used MedImpact time and resources to wine and dine Ceres executives in

11  an effort to "woo" them not to MedImpact, but to their own venture they developed while

12  employed by MedImpact or a competitor, SXC. MedImpact's interference and injunctive relief

13  claims incorporate all prior allegations in the First Amended Complaint, including the factual

14  allegations that extend beyond the misappropriation of trade secrets. (*See, e.g.*, FAC ¶¶ 15, 17, 20,

15  22, 23.) And MedImpact's unfair competition claims specifically calls out these separate tortious

16  acts:

17          The actions of Defendants described herein in misappropriating MedImpact's
            confidential customer and competitive business information, ***and other***

18          ***information and property that belonged to MedImpact, and unfairly and
            fraudulently soliciting existing and potential customers of MedImpact,*** constitutes

19          unlawful, unfair and fraudulent business acts and practices . . . .

20  Moreover, MedImpact alleges:

21          ***Giambruno and Tabback further engaged in unfair and fraudulent business
            practices by undertaking efforts to establish a competing venture while still***

22          ***employed by MedImpact using both time and resources, including power point
            presentations and other MedImpact proprietary information such as business***

23          ***methods, plans and processes, target lists, etc., that should have been devoted to
            their duties and responsibilities as employees of MedImpact. Giambruno,***

24          ***Tabback and SXC further usurped relationships that MedImpact expended
            substantial time and resources cultivating with its customers and clients.***

25

26  / / /

27  / / /

28  / / /

1    (FAC, ¶ 49.)  (Emphasis added.)  As relief, MedImpact seeks not only the return of its trade

2    secrets, but also an order restraining Defendants from unfairly soliciting MedImpact customers,

3    the return of *any other information* that was wrongfully taken, and compensation for the diverted

4    money and resources (and the corporate opportunity) usurped by Giambruno and Tabback.  (FAC,

5    ¶ 51.)

6           Moreover, MedImpact's interference, unfair competition and injunctive relief claims seek

7    redress for Defendants' theft and wrongful use of information that may not necessarily rise to the

8    level of a trade secret, but nonetheless was and is still the exclusive property of MedImpact.  It is

9    clear that these claims do not derive from the identical nucleus of facts as MedImpact's

10   misappropriation claim.

11          This case is not simply about Defendants' misappropriation of trade secrets claim, as they

12   would like the Court to believe.  These two former employees abused the trust MedImpact placed

13   in them and diverted company resources to foster relationships with clients they intended to steal

14   from MedImpact.  (*See* FAC.)  These acts are textbook unfair competition and interference.

15   Discovery will flush out these facts in greater detail, but at the pleading stage MedImpact has

16   provided more than fair notice of the nature of its various claims against Defendants and how they

17   are based on different and additional facts.

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

**IV.**

**CONCLUSION**

For the reasons set forth herein, MedImpact requests that the Court deny Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The claims alleged in MedImpact's First Amended Complaint are not based on the same nucleus of facts, and therefore none are preempted by the CUTSA. At a minimum, should the Court be inclined to grant Defendants' motion it should also grant Plaintiff leave to file a Second Amended Complaint[2] with

additional factual allegations of Defendants' wrongful conduct beyond trade secret misappropriation, consistent with the Ninth Circuit's liberal policy toward amendment.

DATED: June 13, 2008                    LUCE, FORWARD, HAMILTON & SCRIPPS LLP


                                        By:    s/Andrea M. Kimball
                                               Andrea M. Kimball
                                               Michelle A. Herrera
                                               Attorneys for Plaintiff MedImpact Healthcare
                                               Systems, Inc.

101099418.1

---

[2]    MedImpact's First Amended Complaint was filed at the Court's discretion and merely added additional jurisdictional allegations. MedImpact has not yet had an opportunity to substantively amend its Complaint.